Yes, your honor. I'm Bill Kirshner. I represent Mr. Vose, but this morning I will be arguing on behalf of both Mr. Romero and Mr. Vose with Susan Fox, who is representing Mr. Romero here if the court has any particular questions for her. All right. And Ms. Fox, I know that you are sitting at council table, and so you've agreed that's how you're going to allot your time, that you're going to do that together. So he'll be making those arguments. All right. Thank you. Thank you, your honors. May it please the Court, my name is Bill Kirshner. As I said, I represent Mr. Vose. I'll be arguing on behalf of both clients this morning. I would like to try to reserve three minutes of my time, if that would be possible. There are two issues in this case, both of which require reversal. If the court doesn't have a preference, I will start with issue one, which has to do with the hearsay letter that was introduced in this case. There's two possible ways of looking at this. One is simply that because it was found in a drugstash house that it's per se inadmissible. I think that's clearly incorrect under the case law because it was admitted in this case for the truth of the matter asserted. There are many cases that talk about things being found in a stash house, such as drug ledgers, such as indicia of occupancy that are, of course, admissible. But that is because they're being used not for the truth of the matter asserted, but for some other purpose, such as to show that it's a tool of the trade, therefore drug dealing is taking place. Well, let's assume that it is error. All right. And, I mean, I think at the time it, I think there was some indication it was indicia of residency, but there was a number of other documents that showed that the individual resided there. They had other, they had a lot of other evidence to that point. It's unsigned, so, and it doesn't refer to either of the defendants, and it seems to be sort of a ranting woman. I don't even know if, you know, maybe, I don't know, maybe you can't even tell it's a woman, but it just sort of, I just sort of had that impression. But I'm just wondering, I had a hard time deciphering why this would not be harmless error. Well, in light of all the other evidence, because there was clearly other evidence of residency. There was clearly a lot of dope that was found at the locations, and with one client there's the additional thing of guns, and then apparently there were 65 other guns that there weren't charges on. So I'm just trying to see why this was just so incendiary when it doesn't refer to a particular defendant. We don't know who wrote it, and it just seems like sort of a screechy person that's unhappy for a number of reasons that they're not appreciated. A lot of what you said is true. I think there's one factual matter where it does refer to a person named Ritchie, and of course Mr. Romero's referred to by that name, and the prosecutor certainly made great use of that. But Mr. Romero concedes that he resided there on occasion, that he used drugs there. Yes. He brought in a witness who testified she used meth with him there. Yes. So how does it go beyond that? Well, there's two ways to look at it. I think the shorthand way to look at it is to look at the use that the prosecutor made of it in her closing argument, where she said this is incredibly damning. This is extremely damning. If you have any doubt reasonable or not, this letter tells you what's going on. So you can see the use that they made of this. And the other thing, the more substantive thing, and I think this applies to both of the issues in this case, including the prior conviction, the evidence that you have here, and you're correct, there's a great deal of evidence, but it ties them to this place. No evidence tied them to this marijuana. There was no evidence of a person seen. I mean, other than the fact that the place they're tied to has the marijuana. Sure. But you can tie me to a friend's residence, my son's house. I go there a lot. It doesn't mean that whatever is happening at that house is something I'm taking part in, and that's the reasonable doubt that there was in this case before this evidence was admitted. And, you know, if the government had had, say, a wiretap or a DNA, fingerprints, handwriting analysis, a person that saw them involved in this and so forth, you'd be absolutely right. It would be harmless there. But in this case, what you had was essentially mere presence. The fact that they did frequent this place, the fact that they were there. Mere presence in 870 pounds, right? Well. I don't know how big that looks, but that's a lot of pounds. It's more than I weigh. And there's no question that it was for sale. But you're right. It's a huge amount of marijuana, but that doesn't mean that these folks were involved in that marijuana. Mr. Vose was not present at the time. Mr. Romero. His three vehicles, all of which smelled of marijuana, were present. Sure. The room he's in has scales in it and. . . Right. That's absolutely true, but he showed that he actually resided at a different place, that he used to own this, that his son owned this house, and that he had not taken all of his stuff out of it. Including his scales and his. . . Including everything that he had. And he certainly. . . Like I say, they tied them to the place, but there was nothing that tied them to this marijuana deal. And that's what. . . Can I skip ahead to the. . . Certainly, Judge. . . . being a prior conviction. So at trial, was your. . . Was Mr. Vose's. . . Is it Vose? Yes. Vose.  I'm trying to figure out how much did his lack of knowledge of the marijuana play at trial. It seemed to me a difficult to mount a no-knowledge defense, given the evidence of how overwhelming the odor was and the like, and the fact that he was there the same day the place got searched. But I just want to get a better feel from you. How much did you stress that he simply didn't know that the marijuana was there at trial? That was never put forward explicitly by the defense. And I think that that's a mistake that you might get from the government's briefing here, where they say that that was our argument. Our argument was simply that there wasn't sufficient evidence tying them to this marijuana. And, you know, you can go to a place and. . . But what did you. . . Okay, what did you stipulate to try to avoid the prior? We stipulated to the entry of the facts, rather than the conviction, that he had been involved in a previous occasion where marijuana was. . . You can. . . But your whole defense was that either he wasn't there or he didn't know or something along those lines, and you didn't admit that element, and it's something that the prosecutor has to prove. It's. . . The problem is it's highly, highly, highly probative. Highly, highly probative. And that doesn't translate to highly, highly prejudice under the way that you read the law. I mean, highly probative, it can be really damning, and it. . . Prejudice is. . . There's a little bit of a different analysis under that. But you wanted to. . . You just. . . You didn't. . . You didn't. . . You wanted to tie their hands in proving knowledge, and they have to prove that. I don't think we're trying to tie their hands. What we're saying is that the only way that this prior conviction is relevant is the one that's forbidden under Rule 404b, and that is by showing propensity or bad character and action in conformity with that character. That's the only way. And, you know, if you. . . What about intent? It also shows intent in that way, in the way that is not allowed. If you. . . And let me address knowledge for a minute. What the case law talks about in terms of knowledge is what did the person learn from the previous prior that they would not have known? And there's nothing. They didn't. . . You can't say that from their previous prior conviction they knew there was going to be marijuana in that house seven years later. So how do you explain the Merminish case, if I'm pronouncing it correctly? Because that's what you just said is a principle that allows a prior conviction to prove knowledge. That doesn't sound to me at all like what Merminish held. Well, there's several important distinctions for the Merminish case. In that case, you had a person who heroin was shipped into the country in a suitcase. The police intercepted that. They knew it was there. They made a controlled delivery. They raided the place, and he was in possession of that. That's very different than what we have here. I didn't know that there was heroin in the suitcase. He didn't. . . Right. It wasn't anything about the prior conviction that he had to learn. Okay. But there's a. . . He said I didn't know. You're right. And there's two distinctions to that. One is that he was actually in possession of this, and he was saying, I didn't know it was there. These folks weren't. This wasn't their house. They weren't there at the time. Mr. Romero's part of the house was locked away from this. Mr. Vose was not there. He was there earlier in the day, but the delivery man who testified to that said he couldn't smell marijuana. So there was certainly a reasonable doubt that Mr. Vose was there at the time that the marijuana was there. That's what the defense was depending on. And when you go and you tell the jury, well, look, he's done the same thing before, the jury is going to make the decision that he's got bad character. But what was your stipulation, that the substance was marijuana, right? That was your stipulation. Yes. But they still have to prove that Vose knew it was marijuana. And why isn't that enough to make knowledge an issue for Rule 404b purposes and render the prior conviction admissible? Because the only way it proves that is through propensity. It doesn't ---- But propensity is primarily used to show identity. And there's no problem about identity here. Your theory is this man is utilizing a place where someone is storing marijuana. And the question is, what is his relationship, if any, to the marijuana? Now, under the case law, that's an intent issue. What are his intentions with regard to that marijuana? Your theory is his intentions are nonexistent. It's just there and he's there. Right. The government's theory is he's storing it there to sell it or to dispose of it or transfer it. Exactly. And the issue that you're talking about would have arisen if the defense had said, gee, we knew that there was marijuana there, but we didn't intend for it to be there or we didn't intend to sell it or something like that. Does that differ from what you did say? Because what we said is there's simply no evidence connecting us with this marijuana. And what the government said is you can look at what he's done in the past and you can determine from that that he's involved in this as well. And that's what 404B specifically prohibits. And that's why it's not admissible. And in finishing your answer on the Merminish case, the other big difference in that case is that you had not only prior acts, but you had acts after his arrest. And those tended to show that around that time, this gentleman was doing that sort of stuff. What we've got here is an act that took place seven years earlier. The only thing that you're doing from that is saying, this fellow has bad character. He's the kind of guy who does this. So if you find marijuana in his house, he must be involved. That's the one thing that you can't do under 404B. And that's the thing that took away the reasonable doubt that the defendants would have had in this case. Certainly, there was a lot of evidence that they were connected to the place, but nothing that connected them to this marijuana. And these two issues, both the hearsay letter and the prior act, together were devastating. They were devastating individually and require reversal individually. But put together cumulatively, they were game over for the defense. And I'd like to reserve the balance of your time. Yes, I would, Judge. Thank you. Thank you very much. Good morning, Your Honors. May it please the Court, I'm Angela Woolridge, appearing on behalf of the United States. The government offered the letter that's at issue in this matter as indicia of occupancy of the residence. But how does it show that? I mean, it's unsigned. Does it really, you know, how does it show that? I mean, and it just – and that's not really even why the Court admitted it, right? It's not really exactly clear why the Court admitted it, but – It's not exactly clear, Your Honor, why the Court did admit it. It appeared to be for a broader purpose and for the – possibly for the truth of the matter. It's not clear from the record. But regardless of the theory for admission, any error from its admission was harmless in light of the overwhelming evidence. Were you trial counsel? I was. So what's this about in your closing argument? You know, waving that unsigned thing is this, you know, the – that, you know, the epiphany of why they're guilty. And it's so important, and then you want to tell me it's harmless error. Your Honor, the government did – and I did – have the – present the theory in closing argument that that letter was important evidence against the defense. However, it's important to point out that that was one piece of the evidence. That was one segment of a – of 54 pages of closing argument that I made, focusing on one piece of evidence. However, there was so much other evidence. Well, I guess it's just if you, you know, believe me now, believe me later. And, I mean, I was saying, I don't see why it's that important, but you apparently thought it was important. And now you're saying, well, if it was error, that it was harmless. That's correct, Your Honor. I think even if the government, and myself specifically, felt that it was important, aside from that, if there's evidence that – that setting that letter aside is sufficient to sustain the jury's guilty verdict, then the harmless error standard is still met, regardless of what the government's position was, regardless of what my personal belief in the letter was. Setting that letter aside, it's still harmless error if there is enough significant evidence to uphold the conviction. In this case … So what's your best theory of admissibility in your best case? Our best theory of admissibility, I believe, is our initial position, that it was indicia of occupancy. However, again, it's not clear that the Court – in fact, it seems that the Court – the district court did disagree with that and believed that it should be admissible under another purpose. And so it's our position that the letter was indicia of occupancy. It's our position that the letter was indicia of occupancy because it showed that there were, rather than this defense theory of this was an abandoned trailer, it was just being – being used to store items, that – that there were, in fact, people living there because there was a letter written to someone there suggesting that there was activity going on at the time. And taken in light of all the other evidence, which is our position, it was overwhelming of guilt and overwhelming tying the defendants to the residence. So what's the other indicia of residency that you have? First of all, we have evidence that both of the defendants were at that residence the very same day. Defendant Romero, by his own admissions, was at that residence within seconds – those were his words – within seconds of being stopped by law enforcement that day. And that he had, in fact, been in the back part of the trailer where the marijuana was found that very day, that he had been living there that – that previous week. The defendant – defendant Vose had been seen within hours by an eyewitness who testified that he had delivered about $100 worth of frozen foods, perishable items, to the defendant in June in Tucson, Arizona, to the defendant at that residence earlier that same day. Clearly, indicia of someone who is spending time there, planning to spend additional time at that residence, not, as the defense argued, wasn't – wasn't spending any time there at all and had no idea what was going on there. Defendant Vose had utility bills for that very month, Social Security statements. Did the utility bills apply to that place? He had physical possession of them, but did it apply to that place? Was he paying the utilities on that place? There were utility bills that were addressed to Defendant Vose. There was also utility bills that were addressed to his son. The government's theory is because the defendant was trying to hide his interest in that property from his wife that certain bills were made out to his son in order to essentially – so that he – so that she didn't kick him off of the property. However, even the bills that had to do with the other property were still addressed to the defendant at the Manville property. Manville is where this event occurred, so I apologize, referring it to the Manville property. There were addressed to the defendant at that property. The Social Security statements for the defendant were addressed to the defendant at that Manville address. Traffic tickets, one that was issued just weeks prior to this occurrence, made out to the defendant where the defendant himself and the deputy who wrote him the traffic ticket testified. The defendant provided that Manville address as his current address. And the court date was just around the time I think it was scheduled to be a few days after the incident in this particular case. So he's holding on to a citation with an upcoming court date at that residence where he gives that residence. In fact, he was stopped at the very same road when he was stopped just a few weeks prior. With regard to Defendant Romero, similar documents, medical bills with recent dates. I believe dates in May that were due, again, within days of this incident. Court documentation with an upcoming court date of the – again, of June of 2007, this same month of this incident. So we have documents that were obtained very recently by both defendants and that reference upcoming dates by both defendants found in the bedrooms that were associated with both defendants. There was no indicia of anyone but Defendant Bose in Bedroom E. There was no indicia of anyone but Defendant Romero in Bedroom D. Both Bedrooms D and E had TVs that were on at the time that were tied to a closed-circuit surveillance system monitoring the property. And the fact that they were both on shows that the individuals that were using the residence and using those bedrooms, Romero for Room D, Bose for Room E, were occupying it at the time. There would be no other reason for those cameras to be on – I'm sorry, the television sets tied to those cameras to be on in those rooms at that time. The odor of marijuana was so overwhelming from the residence that it was impossible to even be outside of the residence, much less inside and not smell it. And then, of course, we have the 871-pound gorilla. It's hard to ignore that much marijuana. I believe it was over 40 or 50 bales of marijuana that were in the room. Counsel, can I stop you there and just ask you about the prior conviction? Yes. Because this case seems mighty similar to our decision in Vavages, if that's how you say the name. So help me on that front. Of course, Your Honor. The main distinction in this case in Vavages is that in Vavages, the only issue was that of identity, where identity here was not an issue. There was no issue that Jack Vose was not the same Jack Vose that was the defendant in this case, the same individual that had an interest in that property. He disputed when he had been there and what exactly his interest was, but there was no question of identity if that was the same Jack Vose. In Vavages, what was at issue, who was the individual that ran from the car? Yes, we knew that Vavages owned that car, but his claim, his alibi was that he wasn't driving, it was someone else that was driving and ran from the car, someone other than him. In here ---- But just articulate, then, the legitimate inference you think the jury could draw in this case from the prior conviction that's different from the inference that we said was impermissible in Vavages. Certainly. In this case where we have a defendant who, again, may not come right out and say, defendant Vose has no knowledge, defendant Vose has no intent, he's arguing that basically he wasn't there, he didn't know about the marijuana, he wasn't there, he didn't intend to be involved in the conspiracy and tend to distribute it and somehow be involved in that offense. So what are the elements you had to prove? With regard to the prior conviction or, I'm sorry, with regard to the underlying case, the underlying charges. Yes. We had to prove that the defendant had possession of the marijuana in his residence, that he knew it was there and had the power or intention to control it. So let me just repeat the question that you haven't answered yet. What's the legitimate inference that you think this jury could draw from his prior conviction? Because the prior conviction tends to prove that he did have knowledge and did have intent because he had that knowledge and that intent in a strikingly similar situation involving almost the same amount of marijuana, 924 pounds instead of 871, possessed in the same location. And that's where it's very, very important. This is not at some other address. This is the exact same location in his trailer, in fact, the same part of the trailer, that back part of the trailer, with a loaded firearm, in fact, the same caliber firearm, a .38. But that just sounds to me like he did it here at the same location once before. He must have done it again. How is that any different? It tends to show that he wasn't unaware. Both in that prior occasion, he also wasn't home at the time. But he was still aware that this was going on in his home. Just as in this case, he wasn't home at the time. It tends to show that he is still aware. Even when he's not home, he's aware of drug trafficking activity that is going on. And he's still involved in drug trafficking activity taking place in that very same residence. And I would submit that even though identity wasn't an issue in this case, if there ever was a drug trafficking crime that qualified as what Vavagis refers to, I believe, as a signature offense, this would be it. The facts are so strikingly similar. It is, as the defense calls in the brief, it's virtually the same offense. And it's not just some vague, ambiguous crime that's happening at various locations. It's happening at the defendant's trailer, no one else's trailer, at the defendant's bedroom with his loaded .38 caliber firearm. Go back one step. So what's so similar about the prior offense other than it was marijuana found at the house before? That sounds kind of generic to me. But what's specific? Sure. The weight of the marijuana, it's within about 50 pounds. We're talking about 871 versus 928 pounds. Where it was, it was in the same back portion of the trailer. It had the same ledgers, wrapping materials, scales, the same equipment, essentially, that the defendant was using in this case. In both cases. And the jury in this case heard all of those details about the prior conviction? They did. They also heard that the prior conviction involved a loaded .38 caliber firearm at the defendant's bed, just as this one did, and that it was the exact same residence. And again, that the defendant wasn't at home at the time that the search happened. But that tends to show that even if he's not at his residence, he still has knowledge of what's going on in his residence. He still has involvement of the drug trafficking going on in his residence, even though he may not be home every single second that that's going on. And the stipulation was that it was marijuana. They stipulated to that. They stipulated that the substance was marijuana. That was one of the elements you had to prove. I'm sorry? You had to prove that. That was one of the elements. That was an element we did have to prove. Essentially, that did relieve the government of its burden of bringing in a chemist to say, I tested this marijuana and it was, in fact, marijuana. However, the government still had the burden, and this was really the government's biggest burden of proof at trial, to show that these two defendants did know that it was marijuana and that the marijuana was in the residence. And that is where the conviction, the prior conviction with regard to Defendant Bose's knowledge, was incredibly relevant, incredibly probative. And we also had to prove his intent as well, to intend the to help achieve one of the objects of the conspiracy in this case, and also that the intention with regard to distribution as was part of the underlying conspiracy. If it had not been as similar, would that have affected the probative value? Perhaps, Your Honor. The government, obviously the similarity of the offense is one of the elements that the district court looked at when deciding to admit this and making that threshold finding under 404B, and certainly has to then weigh the probative value against any prejudicial effect. The strikingly similar facts certainly increase that probative value. Now, I know that when, with regard to knowledge, this Court has found that the prior act need not be so similar in character as the alleged offense. However, in this case, the fact that it was so similar does increase that probative value. I just don't see the probative value, though. You've articulated it as he was aware that marijuana was there, right? That's the inference you wanted the jury to draw from the prior conviction. Correct. But you yourself, when you recited the facts of the case, said it was impossible for anyone who was even outside the house not to know there was marijuana there. So it seems to me that the probative value is minimal, given what you had to prove here. And you weigh that against the prejudice of the defendant and under a 403 balancing. I'm just not sure how the district court could have struck the balance the way it did. Well, I think, Your Honor, because intention is also an element as well. And it could be argued, and I think the defense does it at some point in their brief, even someone who may know about the existence of marijuana is not necessarily involved in a conspiracy. It's not an intentional member of that conspiracy. Well, knowing, having that intention, that's something that, again, is probative of that intention to be involved. How is that different from a straight propensity inference? He was involved in drug trafficking before. Boy, you know what? He must be doing it again, right? Just articulate what's the inference that's different. The difference is that when you have someone that was, I guess, that when you have a prior offense that is indicative of what a person's intention is under these particular circumstances, and in this case, their claim is, we didn't have that, I didn't have that intention, I didn't know about it, I wasn't involved, that, again, it makes more probable the fact that he did, in fact, know about it and that he did, in fact, intend to be involved. Because he did it before, right? I mean, that's just common sense. I'm with you. I'm not saying that's not an inference you can draw or that most juries would draw, but I'm just saying, isn't that the very inference 404B says we can't let juries draw? I think that the problem is distinguishing that, perhaps, common-sense inference from what this Court has found is a proper use of. What's the instruction that you give when you give a prior conviction? There was a limiting instruction that's given, too, correct? There was a limiting instruction that was given, and in this case, the limiting instruction was that the jury, just one second, I believe it was the model Ninth Circuit instruction that the jury, first of all, instructed the jury that they are only to consider that against defendant vows and to consider it for the issues of knowledge, intent, or identity. And that was an instruction that was essentially agreed to by the parties. But it does list identity? I'm sorry? I said it does list identity in addition to intent and knowledge? The instruction that was listed did include identity. However, as this Court pointed out, and as I previously mentioned, identity wasn't an issue in this case, and I think similarly on point in the role case. Well, that's not entirely true. I mean, he wasn't really, they didn't, did they testify? No. So you still did have to prove identity. It just wasn't the gist of what they were arguing. Correct. Again, there was no issue of whether. Well, you didn't think there was an issue, but as a prosecutor, you have to prove each and every element of the offense, and identity is one of them, correct? That's correct. That is correct. Several eyewitnesses did identify the defendant, including the delivery driver who saw him at the residence that previous day. So, and there wasn't a defense put on by the defendant that he was not, again, the same Jack Vose that had the association. Right? He did not. He did present a number of witnesses. Did the other gentleman testify, Romero? No, he did not. And I would just point out that even when identity is not the theory under which prior conviction is presented, this Court in Vaux affirmed the admission of a prior conviction for knowledge, even though the instruction that was given included all of the language of the model instruction, including knowledge, intent, and identity. So it's for our position that that certainly isn't any error to give that instruction in its entirety. Do the judges have any additional questions? You're over your time, but we don't have any. We had questions, so I'm not implying that's your fault. You were asked to answer them, so there's no additional questions. Thank you. Thank you for your time. I think that the argument that you've just heard has not addressed the issue of how a prior conviction shows what a person is doing other than through the impermissible inference that because they did it before, they're doing it again. In the cases that you look at on that subject, if a person says, well, gee, I didn't know what marijuana smelled like or I have an unimpeachable character, I'm a good guy, I would never do that, certainly admissible for that. But what you've got here is simply a guy who wasn't present, a guy who didn't testify, he never said, I didn't do this, he never said any of that. All they did is they brought it in and they said, But when defendants don't testify, the prosecutor has to prove each and every one of those elements. And you've got to bet your booty that if they didn't prove identity, if they didn't prove knowledge, if they didn't, you'd be making a Rule 29 motion when they rest their case, right? That's absolutely true. And the defendants can't be, they can't be, it can't be held against them for not testifying, but then they, but they otherwise don't get the benefit of conceding issues, taking elements, you know, they didn't take those elements off the plate of the prosecutor. They still said prove your case. Right. But if a defendant does something affirmative like that, it brings it up and it puts it in issue and it makes it relevant. As opposed to this, what was done here and said six times in closing argument was, this guy did it before, he did it before, he did it before. And there's only one inference for the jury to draw from that, and that is, he's done it again and, you know, and we can tell from that. And, you know, the discussion is just So what does the instruction say? The instruction said that it could be usable both for identity, knowledge, and intent. So the jury Don't we presume that the jury followed the instructions? Of course. You should presume that the jury followed the instructions, which was allowing them to use it that way. But how could they reach those decisions? How could they say But under your argument, every person that has a prior would get a shield from that prior, and the law simply doesn't say that. It does make them admissible under certain circumstances. It does. And this case didn't present those circumstances. Okay. And if you look at the exact mirror opposite of what you're saying there, if it was always admissible to prove that a person intended to do an act in every single drug case where a person has a prior, it comes in. And that's certainly not the law. Well, it depends on what the prior conviction is. If the prior conviction is burglary, it doesn't show his intent to sell drugs. If the prior conviction is robbery, it doesn't show intention. But if the prior conviction is for storing marijuana in the same place, in the same quantity, probably for purposes of later distribution, that certainly shows intent. When he's coming in there and saying, gee, it's just a coincidence. I happen to be here, and the marijuana is in the back room. Right? And of course, he didn't say any of that. He just put the government to their proof. Well, can't we attribute to him anything counsel says on his behalf? Yes. Okay. And I don't think they said that, per se. But I would also say it. Didn't you just say, at the earlier part of your argument, there's nothing to connect him with that marijuana except proximity. He's there. It's there. Yes. So, don't we have to decide what are his intentions with regard to that marijuana? He has to know it's there. You've told us that because it smells so much. He knows there's marijuana there. What are his intentions with regard to it? Well, first of all, we don't know that he was there when the marijuana was there. So, yes, it smelled a lot. Pachacpos wasn't necessarily there at the time. Mr. Romero may have been there at the time, but he was locked out of that. So he might not even know it was there. That is entirely possible. So that then brings in the element of knowledge. Right. But the only way this proves knowledge is through the impermissible imprints that because he did it before, he did it again. And I would refer you to the Mayans case that talks about what I mentioned before. I see that I'm over my time. And I thank the Court for giving me this chance to answer. But basically, what the Mayans case says is look at what he learned from his previous prior. That's how you use it to show knowledge. And there was nothing that he learned from his previous prior that told him there was going to be marijuana there on that date. And that's why it was inadmissible for that. And I would just remind the Court that there was cumulative error in this case. Both errors together were devastating to the defense. And the standard here is not whether there was enough evidence to sustain the verdict. I think we understand the cumulative error argument. You made it in your brief. So we don't need any additional on that. Unless the judges have any additional questions, you're two minutes over. Thank you. Thank you.
judges: Singleton, Callahan, Watford